CONSTANTENOS ZEVITAS *vs.* CHARLES F. ADAMS & another, trustees, & others.

Suffolk.   May 13, 14, 1931. — July 2, 1931.

Present: CROSBY, PIERCE, CARROLL, WAIT, & FIELD, JJ.

*Conspiracy. Landlord and Tenant,* Termination of tenancy, Rent, "Indemnity clause," Tenant at sufferance. *Equity Jurisdiction,* To enjoin unlawful interference. *Equity Pleading and Practice,* Amendment, Decree, Appeal. *Trust. Waiver.*

In a suit in equity by a lessee of a building against the lessor and others, the plaintiff sought relief respecting an alleged illegal entry upon the leased premises by the lessor, the plaintiff further alleging that the lessor and the other defendants, in a conspiracy "to wipe out" the plaintiff's lease or to compel him to sell it for an inadequate price, had done acts to prevent a sale of his lease at a fair price and the consummation of other negotiations made by him.   Findings by a master to whom the suit was referred negatived the allegations by the plaintiff as to such acts by the defendants.   It appeared that the defendant lessor properly entered the leased premises for breach of the terms of the lease.   *Held,* that the plaintiff, not having proved wrongful acts by the defendants, could not maintain the suit.

A lease of a building by two trustees provided that the lessors, upon failure by the lessee to observe any of his covenants, might enter upon the leased premises without demand or notice.   At a time when the lessee had committed a breach of his covenants by failing to pay rent and taxes when due, one of the trustees, who was the active trustee in the management of the property, stated to the lessee that he was in default, and subsequently authorized an attorney to enter and take possession of the leased premises in the name of the trustees. The attorney entered the building, walked part way up the stairs therein and declared that he thereby took possession of the premises in behalf of the trustees for breach of condition of the lease.   He repeated that declaration in other parts of the building and placed under the door a notice to the lessee that entry had been made for nonpayment of rent and taxes.   The other trustee made no objection to the active trustee's management.   *Held,* that

(1) The authority given by the active trustee to the attorney to enter was sufficient;

(2) The entry was proper;

(3) The lease was terminated by the entry even if the statement by the active trustee to the lessee did not constitute a legal demand.

Proceedings for registration of their title, instituted in the Land Court by the trustees after the entry above described, were *held* not to show a waiver of rights acquired by the entry to terminate the lease.

In all the circumstances, the trustees above mentioned were *held* not to have waived the lessee's failure to pay rent and taxes.

The defendant lessor in the suit in equity above described was permitted to amend his answer alleging a right to recover unpaid rent to the time of entry and also to recover, for a certain period subsequent to the time of entry, under an "indemnity clause" in the lease, whereby the lessee covenanted that upon a termination by reason of his default he would indemnify the lessor "against all loss of rent and other payments which" he "may incur by reason of such termination during the residue" of the term. *Held*, that

(1) The amendment properly was allowed;

(2) The defendant lessor was entitled to recover from the plaintiff the rent to the time of entry;

(3) The defendant lessor was entitled to rent paid by subtenants in the building subsequent to the time of entry;

(4) The defendant lessor was not entitled to recover under the "indemnity clause": such recovery could not be had until the end of the term specified in the lease;

(5) The plaintiff under G. L. c. 186, § 3, was liable to the defendant lessor for rent for such period as he remained in possession of the premises after termination of the lease.

Upon appeal by the plaintiff, in the suit in equity above described, from a final decree ordering, among other things, that the plaintiff pay the defendant lessor a certain sum under the "indemnity clause," it was open to the plaintiff to contend that the defendant lessor was not entitled to that sum although the plaintiff had not filed objections to the master's report nor appealed from an interlocutory decree confirming it.

BILL IN EQUITY, filed in the Superior Court on April 11, 1928, and afterwards amended, described in the opinion.

The suit was referred to a master. Material findings by the master are stated in the opinion. The "indemnity clause" of the plaintiff's lease was as follows: "the Lessee covenants that in case of such termination, or in case of termination under the provisions of statute by reason of default on the part of the Lessee, he will indemnify the Lessors against all loss of rent and other payments which they may incur by reason of such termination during the residue of the time first above specified for the duration of the said term; or at the election of the Lessors the Lessee will upon such termination pay to the Lessors as damages such a sum as at the time of such termination represents

the difference between the rental value of the premises for the remainder of the said term and the rent and other payments herein named."

By order of *Gibbs*, J., there were entered an interlocutory decree confirming the master's report, and a final decree, paragraph 7 of which was as follows:

"7. That the plaintiff is indebted to the defendants, Charles F. Adams and Thomas B. Gannett, trustees . . . in the sum of $29,970.45 for losses of rent and other payments incurred by said defendants, . . . by reason of the termination of said indenture of lease, . . . as in said lease provided, and in addition thereto the sum of $2,658.13, interest on said indebtedness. . . ."

Other material portions of the final decree are described in the opinion. The plaintiff appealed from the final decree and also alleged an exception to the allowance of an amendment to the answer of the defendant trustees.

*W. P. Murray*, (*A. D. Diamond* with him,) for the plaintiff.

*S. Markell*, (*D. H. Greenberg* with him,) for the defendants.

CARROLL, J. The plaintiff, the lessee of a building at the corner of Washington and Dover Streets, Boston, the lease expiring May 31, 1935, occupied one of the stores and sublet the remainder. The defendants Charles F. Adams and Thomas B. Gannett as trustees under the will of Harvey Jewell (hereafter referred to as the trustees) are owners of the fee and the lessors of the plaintiff. The defendants Carl Dreyfus and Edwin J. Dreyfus Properties, Inc. were prospective purchasers. The defendant Harry Marcus was interested in the purchase of the property.

The bill alleges that the trustees, as individuals and trustees, "entered into a secret combination and conspiracy," by wrongful means with Dreyfus and Marcus, to prevent the plaintiff from purchasing the property and "to wipe out plaintiff's said lease" or to compel the plaintiff and his subtenants to sell their leases at an inadequate price. The plaintiff asserts that he had a contract to dispose of his lease at a fair price to persons ready, able and willing to purchase the same; that the trustees had agreed

to sell the property to Marcus; that the plaintiff negotiated the contract; that he was to receive $10,000 for his lease and a broker's commission; that the defendants conspired to prevent this sale. The bill sets out in detail the various meetings, negotiations and proposals made and alleges that by the "power, influence, duress . . . and fraudulent conduct" mentioned in the bill, the defendants caused a number of persons who were about "to hire from the plaintiff . . . vacant portions of said premises, to refuse to have any dealing with the plaintiff"; that as a part of the conspiracy entry was made on the premises and the trustees took possession for alleged breach of conditions, when in fact there was no breach of the conditions of the lease.

The relief asked for was that the defendants be restrained from enforcing "any alleged claim of a breach of terms, covenants and conditions of said lease"; that it be ordered that the trustees illegally entered "or attempted to enter" the premises; that a decree be entered adjudging that no breach had been committed by the plaintiff and that damages be awarded the plaintiff for the injury to his property and business.

The case was referred to a master. The trustees filed an amended answer to recover for the accrued instalments of rent and indemnity under the lease. A final decree was entered dismissing the plaintiff's bill, providing for certain measures of relief for the trustees, with costs to the defendants. There was no appeal from the interlocutory decree confirming the master's report. There was an appeal from the allowance of the amendment of the trustees to their answer and an appeal from the final decree. The plaintiff also filed exceptions to the allowance of the trustees' amended answer. No objections were filed to the master's report.

The report of the master goes into all the details involved in the disputes between the parties and the results of the various negotiations. It is not necessary to refer to them, except in a general way. The lease under which the plaintiff held provided that the rent was to be paid in equal monthly instalments on the first day of each month.

Provision was made for the payment of taxes by the lessee.
The lease was upon the condition that if the lessee neglected
to perform any of the covenants of the lease the lessors
could enter without demand or notice and repossess the
premises as of their former estate.  One of the plaintiff's
tenants was John Marder; his lease contained a noncom-
petition clause reading: "Lessor agrees that he will not
lease, let or permit to be occupied any or all of the other
remaining stores in the buildings . . . for a business in
competition with that this day conducted by the lessee";
the lessor and his assigns were to have the right to sell
cigars and tobacco at retail.  There was a clause in the
lease to the plaintiff to the effect that, if the whole or any
part of the building should be destroyed or damaged by
fire, the lease was to terminate at the election of the lessors.
See *Norris Drug Co.* v. *Gainsboro Building Corp.* 260 Mass.
117.

It appeared that early in 1927 the plaintiff was in weak
financial condition and was anxious to dispose of his lease.
He had no income except from the leased premises; the
corner store was yielding but little income.  Marcus and
the plaintiff carried on negotiations looking to a sale of the
plaintiff's lease.  Marcus attempted to interest Dreyfus
and the Dreyfus corporation in the purchase of the fee.
The master finds that no agreement was made between
Marcus and Zevitas in the spring of 1927 because "a figure
could not be agreed upon."  In the summer of 1927 the
corner store became vacant.  The trustee Adams agreed
with Zevitas to extend his lease for five years if a satis-
factory sublessee was procured and the premises were im-
proved in a manner satisfactory to Adams.  The agreement
contained these words: "This offer is open till Nov. 3d,
1927."  In September or October of that year Adams and
Dreyfus orally agreed that the trustees would sell the prem-
ises subject to the Zevitas lease for $100,000.  Marcus and
Zevitas continued negotiations and Marcus agreed orally
to pay Zevitas $10,000 for the lease.  Attorneys were con-
sulted.  Disputes arose about the fire clause and the rights
of the trustees thereunder, as well as disputes about the

effect of the noncompetition clause in the Marder lease. Marder was unwilling to surrender his lease. No binding agreement in writing for the sale of the lease to Marcus was made. Zevitas was never authorized by the trustees to sell the property. No sale was made by them to Dreyfus. It appeared that Zevitas failed to pay the rent and taxes and made no request to comply with the offer expiring November 3, 1927, and that the trustees entered upon the premises because of the breach of conditions in the lease.

None of the plaintiff's rights was interfered with and no case is made out calling for equitable relief. There was no conspiracy or illegal combination between the defendants. The trustees were willing to sell on satisfactory terms; they in no way attempted to injure the plaintiff; they were willing to extend his lease on conditions and he did not see fit to take advantage of the offer according to its terms. Dreyfus and the Dreyfus corporation at one time were willing to buy the property, but no binding agreement was made. Marcus was unwilling to buy the plaintiff's lease.

To recover the plaintiff must show some actionable wrong. Whatever participation there was by the defendants, it was not a conspiracy and the allegations of conspiracy are mere characterizations. There was no power exercised in combination, as in *Pickett* v. *Walsh*, 192 Mass. 572, and *Willett* v. *Herrick*, 242 Mass. 471. The trustees were the lessors; they were willing to sell the property; they had no desire to cause any injury to the plaintiff. They were not in such a position of power as illegally to injure the plaintiff and were in no such fiduciary relation to him as to make them guilty of a conspiracy. *Loughery* v. *Central Trust Co.* 258 Mass. 172.

From March 1, 1927, to November 25, 1927, there was no one, other than Dreyfus and Marcus, who was ready, able and willing to buy the reversion at the price of $100,-000; and during this period no one was willing to buy the Zevitas lease at a price acceptable to Zevitas. The plaintiff never was authorized by either of the trustees to act for them in selling the estate. The action of the attorneys in discussing the effect of the fire clause in the lease was

no evidence of duress or wrong. The arrangements between Zevitas and Marcus contemplated a written agreement and this was not carried out because the parties failed finally to agree. Certain acts of Marcus in placing signs in the windows of the vacant corner store are relied on to show damage to the plaintiff, but the master found that the presence of these signs caused no injury to the plaintiff or to his interests as lessee. The plaintiff was at no time able to buy the property. In fact on all the controlling issues, without attempting a complete summary, the findings were contrary to the contentions of the plaintiff.

The plaintiff contends that the lease was not terminated, that the rent was not demanded and a proper entry was not made. The lease provided that a failure to pay the part of the taxes and assessments "shall be a breach of the covenant to pay taxes and assessments," rent was to be paid on the first day of every month and the lessee covenanted to pay to the lessors "the said rent at the times, and in the manner aforesaid." The lease also stipulated: "and these presents are upon this condition, that if the Lessee shall neglect or fail to perform or observe any of the covenants contained in these presents, and on his part to be performed or observed . . . then . . . the Lessors lawfully may, immediately, or at any time thereafter, and without demand or notice, enter into and upon the said premises." As we interpret the report it was found that when the rent and taxes were in arrears and before entry was made, a demand was made on the lessee for the rent and taxes due. The report states: "I find as a fact that Adams did, prior to the time of such entry, expressly state to Zevitas and Diamond [his counsel] that Zevitas was in arrears and in default in the payment of rent and taxes." Even if no legal demand for rent was made, the trustees made a lawful entry and thus terminated the lease. On March 1, 1928, Adams informed Goulston, an attorney who was acting for him, that Zevitas owed $1,100 for rent; that he had decided to terminate the lease; and he asked Goulston to do this. A written power of attorney was executed by Adams as trustee for himself and Gannett, on March 3,

1928, to David H. Greenberg, an attorney, granting to him authority "in our names as Trustees as aforesaid to enter" and take possession of the premises described in the lease. On March 3 Greenberg, in the presence of a witness, entered the building and walked part way up stairs which extend within the building to the second floor, and made declaration, "On behalf of the trustees, I hereby take possession of the premises for breach of condition of the lease." Greenberg had with him the lease and power of attorney and "repeated the above formula at the corner store and at the Dover Street entrance of the corner store," and placed under a door of the store a notice to Zevitas that, as he had failed to pay the rent and taxes, entry had been made on the premises. The entry for nonpayment of rent and taxes under the terms of the lease was lawful. *Fifty Associates* v. *Howland*, 5 Cush. 214. *Chetteville* v. *Grant*, 212 Mass. 17. There is nothing contrary to this in *Shannon* v. *Jacobson*, 262 Mass. 463, relied on by the plaintiff.

It is urged by the plaintiff that Adams alone could not authorize the entry without the assent of Gannett, his co-trustee. Adams was the active trustee; apparently Gannett offered no objection to Adams's management of the estate and his actions in dealing with the lessee and terminating the lease. There was no objection to Adams acting as he did; he carried on all the negotiations with the different parties interested in the property; and, in authorizing the attorney to make the entry, he was properly administrating the trust. *Cranston* v. *Crane*, 97 Mass. 459. *Rand* v. *Farquhar*, 226 Mass. 91, 97. *Hull* v. *Newhall*, 244 Mass. 207. In fact the extension of the original lease under which Zevitas held was by means of a writing signed "Trustees under Will Harvey Jewell By Chas. Adams Trustee." The title of Zevitas came from Adams as acting trustee, and the tenant cannot question the title under which he held. *Kendall* v. *Carland*, 5 Cush. 74. *Streeter* v. *Ilsley*, 147 Mass. 141.

There was no waiver of the failure to pay the rent and taxes.

It appeared that the trustees were willing to carry out

the oral agreement made with Dreyfus to convey to him the fee, and were granted on December 27, 1927, a license by the Probate Court to sell the property for $100,000. It also appeared that on March 12, 1928, Zevitas brought an action of contract for $75,000 against Adams and Gannett as trustees and attached the real estate. "The attachment is also of record as outstanding." On March 21, 1928, the trustees brought a petition for registration of title in the Land Court. On May 31, 1928, by interlocutory decree the defendants in the present suit were restrained from prosecuting any proceedings for the recovery of the premises and from interfering with the quiet enjoyment and occupancy of Zevitas and his subtenants; Wendell P. Murray, Esquire, was to receive the rents. A copy of this decree was filed in the Land Court. On June 29, 1928, the attorneys for Zevitas filed in his behalf in the Land Court objections to registration unless made subject to the Zevitas lease and attachment for $75,000. No further action was taken by the Land Court. The petition to the Land Court stated that the petitioners knew of no encumbrance on the property. Suggestions were made that the decree be made subject to the lease. Without describing in detail the procedure before the Land Court in this connection, there was nothing in the conduct of the trustees in the procedure to show they waived the entry or termination of the lease, as the plaintiff argues. Even if the question of the waiver of the entry and termination of lease by the proceedings in the Land Court is open on the pleadings, these proceedings were not inconsistent with the defendants' contention that the lease had been terminated. The proceedings in the Land Court as described by the master were not a recognition of the continuance of the tenancy nor did they indicate in any way a consent that Zevitas could continue to collect the rents.

There is no reason why the plaintiff should have relief against Marcus. The plaintiff after the entry was not the owner of the lease. His lease was then at an end. The master found that after the oral agreement of the trustee Adams to sell to Dreyfus, the Zevitas lease had a "nuisance

value" which the master was unable "to estimate . . . in dollars" but for any other purpose he was unable to find that it had any market or fair value. In one part of the report it appears that Marcus orally agreed to pay Zevitas $10,000 for his lease, see G. L. c. 259, § 1 (4); *Gamwell* v. *Bigley*, 253 Mass. 378, 380, but this statement, as we read the master's report, was not final; it was not considered to be a final agreement until writings were executed. See *Woods* v. *Matthews*, 224 Mass. 577; *Doten* v. *Chase*, 237 Mass. 218. It further appears that negotiations were continued with a view to complete the written contract; that Zevitas continued to collect the rents and mortgaged his lease in November, 1927. The parties failed to agree and no written contract was executed. There was no wrongful interference with the plaintiff's contract rights.

The trustees were allowed to amend their answer by substituting for paragraph 25 a paragraph alleging a right to recover from the plaintiff the rents accrued when entry was made "and other payments" and by adding a paragraph alleging a right to recover, under the indemnity clause in the lease, the rents and "other payments" from March 3, 1928, to February 10, 1931. There was no error in allowing this amendment.

It also appeared that an interlocutory decree was entered May 31, 1928, restraining the defendants in the present suit from interfering with the quiet enjoyment of the plaintiff and his subtenants, and stating that all rents collected were "to be deposited in escrow" with said Wendell P. Murray. If there was an agreement in escrow, the record does not show what it was. We do not know from the record whether Mr. Murray collected the rents from subtenants only or from them and Zevitas.

The final decree ordered Zevitas to pay the trustees the rent and payments due to March 3, 1928. (We assume that the other payments referred to were for taxes and assessments under the lease.) This was correct. Zevitas owed this amount and should be ordered to pay it. *Woodbury* v. *Sparrell Print*, 187 Mass. 426, 431. *Gardiner* v. *Parsons*, 224 Mass. 347, 352. *Louis K. Liggett Co.* v. *Wil-*

*son,* 224 Mass. 456. Mr. Murray was ordered to pay the trustees the sum of $11,641.40 for rents collected and interest thereon. This part of the decree was right. It was ordered that the rents collected were to be deposited with Mr. Murray. These rents belong to the lessors. After entry Zevitas had no claim on them and from that time on the subtenants held under the lessors.

By the final decree the lessors were to recover the rent due from Zevitas after entry by the lessors, this amount being $29,970.45 "for losses of rent and other payments." Recovery was sought under the indemnity clause in the lease. Zevitas objects to this. He contends that there can be no recovery under the indemnity clause until the period specified for the termination of the lease has expired. He is right in this contention. Recovery under an indemnity clause of a lease cannot be had until the specified term of the lease has ended. Recovery cannot be had in instalments. *Woodbury* v. *Sparrell Print,* 187 Mass. 426. *Gardiner* v. *Parsons,* 224 Mass. 347. See *Merchants National Bank* v. *Ryerson,* 251 Mass. 314, 319. Although the plaintiff did not appeal from the decree affirming the master's report and filed no objections to the report, this point is open. *French* v. *Peters,* 177 Mass. 568, 571–572. *Lyons* v. *Elston,* 211 Mass. 478, 482. If Zevitas has been in occupation of the premises since the entry was made or has collected rents, these rents can be recovered from him under G. L. c. 186, § 3. Under this statute, in our opinion, a tenant who holds over after a lease is terminated is liable for rent. An action may be maintained "wherever the relation of tenant and landlord, either by lease for years or at will, . . . had existed between the defendant and the plaintiff." *Merrill* v. *Bullock,* 105 Mass. 486, 492. *Dimock* v. *Van Bergen,* 12 Allen, 551. *Weston* v. *Weston,* 102 Mass. 514. *Emmons* v. *Scudder,* 115 Mass. 367, 371. See *Edwards* v. *Hale,* 9 Allen, 462; *Leavitt* v. *Maykel,* 203 Mass. 506, 510; *Commercial Wharf Corp.* v. *Boston,* 208 Mass. 482, 487. We think the lessors should be allowed to amend their answer so that they can recover from the plaintiff the rents for which he is liable under this principle while

in possession of the premises.   The lessors are not prevented from amending by any election made by them in the pleadings.   The exceptions are overruled.

If an amendment is allowed, the seventh paragraph of the decree is to be struck out, and the Superior Court is to determine the amount of the rents.   The remainder of the decree is affirmed.   If the amendment is not allowed, the decree is to be modified by striking out the seventh paragraph and as so modified it is affirmed with costs to the defendants.

*Ordered accordingly.*