EDWIN S. WOODBURY & another, trustees, *vs.* SPARRELL PRINT & another.

Suffolk.    December 1, 1904. — March 1, 1905.

Present: KNOWLTON, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Fraud,* As to creditors.  *Equity Jurisdiction,* To reach and apply property fraudulently conveyed.  *Landlord and Tenant.  Equity Pleading and Practice,* Bill, Variance, Master's report.  *Words,* "Debt."

A conveyance fraudulent under St. 13 Eliz. c. 5, may be avoided as well by subsequent as by existing creditors.

A claim for loss of rent, under a covenant in a lease that in case the lease is terminated by the lessor for breach of covenant the lessee shall be liable for all loss and damage of the lessor from the premises remaining unleased for the remainder of the term, is a debt within the meaning of R. L. c. 159, § 3, cl. 8, giving equity jurisdiction to reach and apply in payment of a debt property of the debtor fraudulently conveyed.

In a bill in equity to reach and apply property, alleged to have been conveyed fraud-

ulently by the defendant, in payment of a debt to the plaintiff for rent and for loss of rent under a covenant in a lease to pay for such loss if the premises remain unleased during the remainder of the term after the lessor has terminated the lease for breach of covenant, an averment that the defendant owes the plaintiff a sum named for accrued instalments of rent and loss of rent according to an account annexed, which contains a charge of an item on the first day of each month with the words "instalment due under lease", naming the amount of the monthly rent, is not bad for want of sufficient certainty in not naming the date of the termination of the lease and distinguishing the items for rent from those for loss of rent, if a master has found that the loss of rent from month to month was the same in amount as the rent itself before the termination of the lease, the date of the termination being a matter within the defendant's knowledge.

In a suit in equity founded on the covenants of a lease, there is no variance if a lease is admitted in evidence which corresponds with that alleged in the bill but in addition has written upon it a guaranty of payment of the rent signed by a third party and also an agreement signed by the plaintiff to put into the leased premises two skylights and a water closet and to supply water service from the city of Boston, if these have been found by a master to be additional instruments.

Whether an exception to a master's report because the master did not make certain rulings can be considered by this court if the master's report does not show that any of the rulings were requested except so far as this can be inferred from the master's statement that objections were filed on the ground that the rulings were not made, *quære.*

A suit in equity to reach and apply property, alleged to have been conveyed fraudulently by the defendant, in payment of a debt to the plaintiff for loss of rent, under a covenant in a lease to pay for such loss if the premises remain unleased during the remainder of the term after the lessor has terminated the lease for breach of covenant, or if the premises are let after such termination for a rent less than that reserved in the lease, is brought prematurely if the bill is filed while the premises continue to remain unleased and before the end of the term of the lease, as the amount of the loss cannot be determined at that time and therefore is not payable.

KNOWLTON, C. J.    This is a bill in equity brought under the R. L. c. 159, § 3, cl. 8, to reach and apply in payment of a debt property alleged to have been fraudulently conveyed by the debtor, with intent to defeat, delay or defraud his creditors. The defendants filed a demurrer, which was sustained in part and overruled in part, and the case comes before us on the defendants' appeal from the order overruling a part of the demurrer, and from a final decree for the plaintiffs which overruled exceptions taken by the defendants at the hearing before the master.

The plaintiffs' principal claim is for rent accruing under a lease for a term of years, and the defendants' first ground of demurrer is that the statute does not apply to a case in which

the debt accrued after the conveyance was made. But it is familiar law that a conveyance fraudulent under the St. of 13 Eliz. c. 5, as against existing creditors at the time of its delivery, also may be avoided by subsequent creditors. *Parkman* v. *Welch*, 19 Pick. 231. *Livermore* v. *Boutelle*, 11 Gray, 217. On the allegations of the bill, a demurrer on this ground cannot be sustained.

One of the provisions of the lease on which the plaintiffs' claim is founded is as follows: " And, in case of such determination, [of the lease by the lessor for a breach of the covenants,] the lessee shall be liable to the lessor for all loss and damage sustained by the lessors on account of the premises remaining unleased, or being let for the remainder of the term for a less rent than that herein reserved." The second ground of demurrer is that the claim in the bill is for "rent and loss of rent." This stipulation is an agreement, which is binding as a contract in the nature of a covenant, to pay the lessors the amount of their loss or damage on account of the premises remaining unleased after a determination of the lease for a breach of the covenants. It also includes an agreement to pay for the loss, if any, on account of the premises being let at a less rent for the remainder of the term. The liability thus created is as much contractual as the obligation under the covenant to pay the rent monthly. The only difference is that the amount is unliquidated ; and this brings us to the question whether the word " debt " in the R. L. c. 159, § 3, cl. 8, which is used also in the same way in clause seven of this section, is to be given a narrow, technical meaning, or is used in a broad sense to include ordinary obligations founded on contract, when the amount due has not been definitely ascertained. We are of opinion that in this statute it is used in its broad sense. There is no reason why a liability founded on a judgment, or a formal covenant, or an instrument under seal, should in legal effect be any different, in regard to a fraudulent conveyance by the debtor, from other kinds of contractual liability, even if the amount to be paid is unliquidated. In *Mill Dam Foundery* v. *Hovey*, 21 Pick. 417, 455, Chief Justice Shaw said, in reference to a statute which imposed upon stockholders of corporations a liability for its debts: " Though a question was made, whether such a claim

for unliquidated damages is a debt, within the meaning of the statute, we do not think it admits of a reasonable doubt, that all such claims for damages were intended to be included in the term 'debts.'" So in *Gray* v. *Bennett*, 3 Met. 522, 526, the court said, in construing an act for the relief of insolvent debtors, that ."the word 'debt' is of large import, including not only debts of record, or judgments, and debts by specialty, but also obligations arising under simple contract, to a very wide extent; and in its popular sense includes all that is due to a man under any form of obligation or promise." See also *Atlas Bank* v. *Nahant Bank*, 3 Met. 581, 582; *Wyman* v. *American Powder Co.* 8 Cush. 168, 182; *Stratton* v. *Hernon*, 154 Mass. 310; *Nichols* v. *Eaton*, 91 U. S. 716, 725; *Frazer* v. *Tunis*, 1 Binn. (Penn.) 254; *New Haven Steam Saw Mill Co.* v. *Fowler*, 28 Conn. 103, 108; *Haynes* v. *Brown*, 36 N. H. 545; *Fisher* v. *Consequa*, 2 Wash. C. C. 382, 385; *Stiff* v. *Fisher*, 2 Tex. Civ. App. 346. We are of opinion that a claim for loss of rent, under the agreement, is a debt within the meaning of this statute.

The third ground of demurrer is that the defendants' claim is not stated with sufficient certainty. The averment is that the defendants "owe them for accrued instalments of rent and for loss of rent under the covenants of said lease, the sum of $1,762.50 . . . according to the account hereto annexed." The account annexed contains a charge of an item on the first day of each month in the words, "Instalment due under lease, $212.50." Upon the findings of the master, the loss of rent from month to month after the determination of the lease was the same in amount as the rent itself before its determination. While the averment would have been complete in its history if it had stated the time when the lease was determined and the covenant to pay the rent gave place for the future to a contract to pay for the loss of rent, this fact was then within the defendants' knowledge, and the general description of the debt for accrued rent was correct without it. The demurrer did not particularly refer to this, but the third ground of it was in general terms, "because the plaintiffs' claim is not stated with that degree of certainty with which the defendants are entitled." Looking to the claim for rent as distinguished from that for loss of rent, we are of opinion that this ground of demurrer was rightly

ruled to be insufficient. The other grounds are not now insisted upon.

The first exception is that the master admitted the lease in evidence against the defendants' objection that there was a variance between it and the copy annexed to the bill. This objection was because, on the same paper, following the executed lease, was written a guaranty of payment of the rent, signed by another party, and also an agreement, signed by the lessors, to put into the leased premises two skylights and a water closet, and to supply water service from the city of Boston. These were found by the master to be additional instruments, and we see no error in this conclusion.

The fifth, sixth and seventh exceptions are, that the master did not distinguish in his findings between the amounts due for rent and those due for loss of rent. He did find that, on April 4, 1903, the plaintiffs determined the lease and took possession. He also found that they immediately made a reasonable effort to relet the premises, but without success up to the time of filing the bill. He found that the first three items of the account were for rent due before the time of taking possession, and that all the items except that for water are due, they being severally charged as "Instalment due under lease." He reports that he does not consider it material whether the amounts found should be described as rent or by some other name.

The tenth exception is because the master did not give certain rulings requested, one of which was in substance that the claim for loss did not accrue until after the expiration of the lease and that there was no such debt due when the bill was filed. The master's report does not show that any of these rulings were requested, unless it appears inferentially from his statement that objections were filed on the ground that they were not given. This exception is informally taken, and if it stood alone, it would be questionable whether it should be considered. See *O'Brien* v. *Keefe*, 175 Mass. 274. But the former exceptions, without this, fairly raise a question as to the correctness of the allowance by the master for instalments due under the lease after its determination. We must, therefore, consider the meaning of the stipulation referred to.

The lessee is to be liable for — that is he agrees to pay — the amount of loss or damage sustained from either or both of two causes, namely, " the premises remaining unleased ", and their " being let for the remainder of the term for a less rent " than that reserved. The question is, When is the lessee to pay the sums referred to? The liability is independent of the obligation under the covenant to pay the rent during the term of the lease. No rent accrues after the lease is determined. The lessor has the premises, and presumably uses them or lets them to another tenant. They are liable, however, to remain unleased and unused for a time, but ordinarily not for a very long time. The lessee agrees to pay for the loss that may come from this liability. He is to pay it once for all. He does not agree to pay it in instalments. Much less does he agree to pay rent as rent, according to the covenants, for the term previously ended by the lessor's entry. We can discover nothing to show that he is to make this payment until the premises cease to remain unleased. The liability rests upon the agreement contained in the lease, and as to this there is no breach of contract on the part of the lessee, until the time for payment arrives.

In this case the premises remained unleased until after the commencement of the suit, and the defendants had not then become liable for this loss. It follows that the decree must be reversed, and the exceptions touching this subject be sustained.

The matters referred to in the remaining exceptions need not be considered, further than to say that they disclose no error of law.

The omission of the judge to hear and determine the question of fraud, we understand to have been in accordance with the desire of the parties. This is indicated by the filing by the defendants of a bond, with a surety, to pay the amount, if any, that should be found due, and by the reference to the master of nothing but the question what was due under the lease.

There must be a decree for the plaintiffs for the amount due for rent, according to the master's report, at the time of the determination of the lease.

*So ordered.*

*G. C. Abbott,* for the defendants.
*W. H. Brown,* for the plaintiffs.