275 WASHINGTON STREET CORP., trustee,[1] *vs.* HUDSON RIVER INTERNATIONAL, LLC,[2] & another.[3]

No. 11-P-306.

Suffolk. November 2, 2011. - March 9, 2012.

Present: KANTROWITZ, FECTEAU, & CARHART, JJ.

Further appellate review granted, 462 Mass. 1101 (2012).

*Contract,* Lease of real estate, Performance and breach, Indemnity. *Real Property,* Lease. *Damages,* Breach of contract. *Indemnity. Landlord and Tenant,* Rent.

In a civil action brought by a landlord seeking damages from a tenant for abandoning commercial premises that it had leased, the judge, although correctly granting summary judgment in favor of the landlord on the issue of liability, erred in concluding that the landlord's damages were due and payable forthwith, where recovery under the indemnification clause included in the lease could not be had until the specified term of the lease had ended; and where the landlord was not entitled to the immediate assessment of damages under the lease's "cumulative remedies" clause, in that the landlord's claim for immediate assessment of damages did not present a remedy outside the relief already afforded by the indemnification clause. [422-427] KANTROWITZ, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on May 29, 2008.

The case was heard by *Charles T. Spurlock,* J., on motions for summary judgment, and entry of final judgment was ordered by *Carol S. Ball,* J.

*Bruce E. Falby* for the defendants.

*David G. Hanrahan* for the plaintiff.

FECTEAU, J. The defendants, Hudson River International, LLC (tenant) and Laboratorio Lucas Nicolas S.L. (guarantor), appeal from a Superior Court judgment ordering the payment of dam-

[1]Of the Washington Street Realty Trust II.

[2]Doing business as Vital Dent.

[3]Laboratorio Lucas Nicolas S.L.

ages to the plaintiff, 275 Washington Street Corp., as trustee of the Washington Street Realty Trust II (landlord), for breach of a commercial lease (lease).[4] The tenant concedes that it likely will owe damages for abandoning the premises in 2008 and ceasing to pay rent. The issue on appeal is whether those damages may be assessed as of the present time, or whether assessment must await the end of the lease term. As the lease contained an indemnity clause as its primary measure of damages incurred after the date of breach to the end of the lease term, the tenant argues, based on the current state of Massachusetts law, that these damages cannot be ascertained until the end date of the lease in 2018. Conversely, the landlord argues, and a Superior Court judge agreed, that since the premises have been re-leased, the landlord's damages, i.e., the monetary difference in rent between the original and substituted leases, are due and payable forthwith. Although the landlord's claim has some logical and practical attraction, the tenant's view is consistent with the present state of Massachusetts law and is one with which we are constrained to agree.

*Background.* The landlord and tenant entered into a twelve-year lease beginning April 13, 2006, and ending April 16, 2018. The premises, located at 221-227 Washington Street in downtown Boston, were intended for use as a dental practice. The guarantor, a Spanish corporation, signed a separate guaranty

---

[4]A Superior Court judge characterized the complaint as seeking "to recover unpaid and future rent and costs" based on breach of a lease as against the tenant, in count one, and the guarantor, in count two. The judge granted partial summary judgment in favor of the landlord, ruling that under the lease, the landlord was entitled to recover damages for loss of rents and costs once it obtained a new tenant for the premises. (The landlord asserted, and the tenant did not dispute, that the premises have been rented to a new tenant for the remainder of the tenant's original lease term.) Based on supplemental material filed by the parties, a different judge determined that the landlord was entitled to pretermination damages of $37,176.24; lost rent damages while the premises were vacant, following termination, of $449,759.92; and attorney's fees of $103,367.91. Thereafter, the parties entered into a stipulation as to the remaining damages, including the rate of prejudgment interest, the costs incurred by the landlord to secure a new tenant, and the present value of future damages (based on the difference between the rent the tenant would have paid and the rent the new tenant was going to pay), and agreeing to the entry of judgment in the total amount of $1,092,653.36. The judgment that was entered accordingly specified that "[a]ll appellate rights of [the] defendants in connection with the [c]ourt's orders and judgment in this case are preserved."

agreement as security for the tenant's obligations under the lease. The lease stipulated that rent was $16,000 per month, raised incrementally each year of the tenancy, and that the tenant was responsible for a share of the operating costs and taxes.

Two clauses of the lease bear particular significance to our discussion. The first, par. 21(h), required the tenant to indemnify the landlord, upon default by the tenant, "against all loss of rent and other payments which Landlord may incur by reason of such termination during the remainder of the term." The second, par. 44(j), was a "cumulative remedies" clause, stating that "[n]o remedy or election hereunder shall be deemed exclusive but shall, whenever possible, be cumulative with all other remedies at law or in equity."

In May, 2007, just over a year after both parties signed the lease, the dental practice closed, and within months, on October 10, the equipment was removed. While some rental payments were intermittently made,[5] payments ceased entirely by April, 2008.[6] One month later, on May 7, 2008, the tenant notified the landlord that no further rent payments would be made and that the tenant did not plan on returning to the premises. Two days later, the landlord sent a letter to both the tenant and the guarantor outlining the tenant's defaults, and asserting its rights to "avail itself of all remedies to which it is entitled under the Lease." Additionally, the landlord notified the tenant that the landlord did not waive its rights "with respect to the prior notices and specifically reserv[ed] all rights flowing therefrom." On May 19, 2008, the landlord re-entered and took possession of the premises, effectively terminating the lease agreement.

The landlord initiated this lawsuit on May 29, 2008, alleging breach of contract by both the tenant and the guarantor and seeking damages for unpaid rent plus other charges up to the date of the complaint, as well as for "all of the damages resulting from [the tenant's and guarantor's] breaches of Lease and Guaranty." The tenant and guarantor thereafter moved to

---

[5]The tenant failed to pay operating and maintenance costs.

[6]In response to these defaults, notices were delivered to the tenant on November 30, 2006; June 13, 2007; and October 18, 2007. The notices demanded that the tenant pay overdue rent, late fees, and operating and maintenance costs, and warned that the landlord would avail itself of all the remedies in the lease if payments were not made.

dismiss, claiming that suit was brought prematurely since the lease term had not yet run and therefore the amount of damages owed was not ascertainable. A judge of the Superior Court denied the motion, concluding:

> "[o]n the other hand, it may be that the [landlord] has entered (or before trial will enter) a lease covering part or all of [the remainder of the lease term]. Factual questions about such arrangements and about whether or the extent to which loss of rent may be reasonably ascertained render the [tenant's and guarantor's] arguments about the speculative nature of future damages sufficiently premature to deny the motion to dismiss."

On March 26, 2010, the landlord in fact entered into a ten-year lease with a replacement tenant, covering the entire remainder of the term of the original lease but at a lower rental price. On cross motions for partial summary judgment, a different judge (summary judgment judge) ruled on April 16, 2010, that the tenants "are liable to the [landlord] for breach of the Lease. Further, the [landlord] may immediately recover rent and costs owed until termination of the Lease and loss of future rents and costs based on the indemnity provision of the Lease." The summary judgment judge recognized that in Massachusetts, a landlord could not typically recover losses under an indemnification clause until after the expiration date of the original lease, but found an exception when a landlord re-leased the property. Following the submission of supplemental material on the damages issue, an order regarding partial summary judgment was issued on September 8, 2010, assessing partial damages in favor of the landlord and outlining the disputes that remained outstanding. The parties stipulated as to the amounts due on the remaining disputes, and on September 28, 2010, judgment entered accordingly for the landlord, preserving the tenant's and guarantor's appellate rights.

The tenant and guarantor appeal, specifically averring that (1) under an indemnification clause, a landlord must wait until the end of the lease term to definitively calculate damages; and (2) as the duties and responsibilities of the guarantor follow those of the tenant, the guarantor is likewise entitled to postpone

the assessment of damages until the end of the lease so that damages may be discerned with clarity.

*Discussion.* 1. *Indemnification clause.* In general, the termination of the lease ends a tenant's rental obligations absent a provision stating otherwise. See *Locke* v. *Fahey*, 288 Mass. 341, 343 (1934) (tenant not responsible for future loss in rental income since commercial lease "contained . . . no covenant of indemnity or collateral agreement requiring the lessees, in the event of such entry or upon any termination of the lease, to pay to the lessor during the balance of the term of the lease the rent reserved or the difference between the amount of such rent and any lesser amount which might be received by him upon a reletting of the premises"). See also *Edmands* v. *Rust & Richardson Drug Co.*, 191 Mass. 123, 127 (1906); *Krasne* v. *Tedeschi & Grasso*, 436 Mass. 103, 109 (2002). Not surprisingly, many leases include additional provisions, including indemnification clauses such as the one at issue, and rent acceleration or liquidated damages clauses, which permit the landlord to seek damages before the end of the original lease term for potential lost income in the event of a breach of the lease by the tenant.[7]

Under an indemnification clause, a landlord may seek damages for losses sustained or to be sustained after the breach and reentry has occurred, but Massachusetts case law traditionally limits such a claim to those damages occurring prior to termination of said lease, at which point such damages can be definitively established. See, e.g., *Zevitas* v. *Adams*, 276 Mass. 307, 317 (1931). An indemnity clause in a lease further requires a

---

[7]The present lease did not contain any of several other clauses to secure against the outcome here, such as a liquidated damages provision; such a clause was later added as a part of the subsequent lease of these premises. We note that the landlord in this case posits that the reason for the exclusion was the uncertainty surrounding the legality of liquidated damages clauses in Massachusetts prior to 2007. See *Cummings Properties, LLC* v. *National Communications Corp.*, 449 Mass. 490, 494 (2007) ("[i]t is well settled that a contract provision clearly and reasonably establishing liquidated damages should be enforced so long as it is not so disproportionate to anticipated damages as to constitute a penalty. . . . A rent acceleration clause, in which a defaulting lessee is required to pay the lessor the entire amount of the remaining rent due under the lease, may constitute an enforceable liquidated damages provision so long as it is not a penalty"). See also *NPS, LLC* v. *Minihane*, 451 Mass. 417, 420-423 (2008).

terminated tenant to indemnify a landlord for any losses result-ing from termination. See *Priestley* v. *Sharaf's, Inc.*, 4 Mass. App. Ct. 218, 221-222 & n.4 (1976) (describing lease indemnity clause). An indemnity clause differs from a liquidated damages clause in that it "do[es] not provide for liquidation of damages . . . , nor indeed for any right to damages for breach of the covenant to pay rent." *Manhattan Properties, Inc.* v. *Irving Trust Co.*, 291 U.S. 320, 337 (1934). Instead, once the period specified for indemnification ends, an indemnity clause obligates a defaulting tenant to reimburse a landlord for any actual losses.

As succinctly stated in *Zevitas* v. *Adams*, 276 Mass. at 317, "[r]ecovery under an indemnity clause of a lease cannot be had until the specified term of the lease has ended." The reasoning underlying this legal tenet is that such liability is ultimately "contingent upon events thereafter occurring, because the full amount which the lessee eventually must pay for the remainder of the term cannot be wholly ascertained until the period ends." *Gardiner* v. *Parsons*, 224 Mass. 347, 350 (1916). This rule of law contemplates contingencies such as a taking of the property by eminent domain, destruction by fire or other major catastrophe, and other events that would serve to terminate the lease as a mat-ter of law or contract, and that support the rationale for delaying an assessment of damages until the end of the lease period.

The summary judgment judge recognized these principles but ruled that, in the instant dispute, the tenant is "obligated to pay damages for loss of rent and costs when the premises are rented to a new tenant for the remainder of the original lease term." In support, the judge relied upon *Woodbury* v. *Sparrell Print*, 187 Mass. 426 (1905), a decision somewhat difficult to interpret and apply. We find such reliance to be misplaced.

The lease agreement in *Woodbury* differs substantially from the lease the parties agreed to in the instant case. In *Woodbury, supra* at 431, the tenant was held liable for "the amount of loss or damage sustained from either or both of two causes, namely, 'the premises remaining unleased,' and their 'being let for the remainder of the [lease] term for less rent.' " Here, par. 21(h) holds the tenant responsible for "all loss of rent and other pay-ments which Landlord may incur by reason of [the tenant's] termination [of the lease] during the remainder of the [lease]

term." Paragraph 21 does not articulate a separate indemnification period for the purposes of determining damages for the length of time, if any, that the premises remain vacant. The tenant remains liable for those damages that are assessed based on both the length of time the premises stand unlet and the difference, if any, in rent under a subsequent lease. The extent of the applicability of *Woodbury*, therefore, is not grounded in its ultimate conclusion that the tenant must pay the damages but, rather, in the rationale rendered by the court when it determined at which stage the tenant must pay the damages and, relatedly, under which "cause" set forth in the lease that the tenant must do so.

To this end, the *Woodbury* court noted that the premises at issue remained unleased at the time the lawsuit commenced and that, as such, the tenant was not liable for damages at that point in time. *Ibid.* The tenant was liable, however, for any damages that accrued while the premises remained untenanted, and "the time for payment" was when "the premises cease to remain unleased." *Ibid.* At the moment the premises are re-leased to another tenant, the period in which they are "unleased," one of two periods in which the tenant may incur liability under the terms of the lease, naturally terminated. This holding is consistent with the general rule that indemnification damages are properly calculated at the end of the period specified in the lease. See *Gardiner* v. *Parsons*, 224 Mass. at 350. Where the lease does not provide for a specific obligation on the part of the tenant to pay damages directly resulting from the premises remaining unlet, we conclude that the indemnification period has not terminated. Put another way, where the indemnification period provided for in the lease, during which any damages may accrue, has not yet ended, damages cannot be properly assessed.

The summary judgment judge need not have relied on *Woodbury* since the proposition set forth in *Gardiner*, *supra*, that damages must be calculated at the end of the lease period, necessarily relied on *Woodbury* and other cases. However, the parties have cited no case that departs from the holding of *Gardiner*, *supra*, and none that supports the proposition that a landlord who has obtained a new tenant and thereby can calculate a projected difference in rent as between the old and new leases

thereafter acquires the right to seek that difference as damages prior to the expiration of the old lease term, and without regard to contingencies that may thereafter occur. Rather, the bright-line rule remains that a landlord must wait to collect damages until the end of the original lease term, the very point at which damages may be "wholly ascertained," *ibid.*, and fully assessed against the tenant.

We are cognizant of the concerns raised by this long-established rule barring recovery until the end of the original lease, given the possible intervention of factors, presently unknown, that make the determination of damages uncertain at the present. We also recognize the possibility that this rule, which forces this landlord to wait until 2018 to determine post-termination damages, may in effect make it impossible for the landlord to recover its true damages from this corporate tenant or guarantor, because of the protections afforded by legal processes, such as dissolution or bankruptcy. However, given the present state of the law and the specific terms of the contract to which parties of equal bargaining power agreed, we are constrained, nonetheless, to deny recovery to the landlord under the indemnification clause of this lease.

2. *Cumulative remedies clause.* The landlord alternatively claims to be entitled to the immediate assessment of damages under par. 44(j), the "cumulative remedies" clause.[8] Specifically, the landlord claims that, upon the tenant's breach of the lease and upon the landlord's reentry and possession thereafter, the landlord was immediately entitled to enforce the tenant's liability for damages incurred "during the remainder [of the term of the lease]," for those periods of time in which the leasehold was vacant or in which a new tenant paid rent less than the original rent, in spite of the presence of an indemnification clause in the lease.[9] As discussed above, the inclusion of an indemnification clause postpones any assessment of damages to

---

[8]Paragraph 44(j) of the lease provides: "No remedy or election hereunder shall be deemed exclusive but shall, whenever possible, be cumulative with all other remedies at law or in equity."

[9]As already noted, the subject lease did not contain a liquidated damages clause, nor does either party assert that such a clause or a functional equivalent existed in the document. The landlord nevertheless asserts its right to presently collect any and all damages due as a result of the tenant's breach of the lease.

the end of the term, and therefore we find the landlord's reliance on the language of par. 44(j) to be misplaced.

To assess the merits of the landlord's asserted right to relief, we must analyze the larger theory under which the contention arises. An action for a breach of contract is brought based on the specific agreements between the parties, as set forth in the contract. There is a marked distinction between the remedies sought by the landlord under the contract and those expressly reserved in the cumulative remedies clause, which are "available to the parties outside of the contract itself." *Dixon* v. *Perry & Slesnick, P.C.*, 75 Mass. App. Ct. 271, 278 (2009).[10]

The landlord's claim for immediate assessment of damages does not present a remedy outside the relief already afforded by the explicit language of the contract, namely, the indemnification clause. "In interpreting a contract, the court must construe all words that are plain and free from ambiguity according to their usual and ordinary sense." *Suffolk Constr. Co.* v. *Lanco Scaffolding Co.*, 47 Mass. App. Ct. 726, 729 (1999). While the literal interpretation of par. 44(j) effectively broadens the scope of landlord remedies by making available legal remedies for breach of contract as well as equitable remedies outside the contract, it does not affect the remedies that are already written into the contract. Instead, such a cumulative remedies clause only serves to permit relief to the extent that extra-contractual remedies apply to the instant dispute, and not to provide the landlord with additional contractual remedies not contained within the contract and to which the tenant did not specifically agree.

Moreover, the rationale cited by the landlord, that the landlord is entitled to the "benefit of the bargain," is not a separate remedy but a theory or measure of damages.[11] It is a well-settled rule for determining damages in a breach of contract

---

[10]While the meaning of a cumulative remedies provision in a commercial lease agreement does not appear to have received the benefit of prior examination in the Commonwealth, we find support, nonetheless, in *Dixon* v. *Perry & Slesnick, P.C.*, 75 Mass. App. Ct. at 278, which involved a similar clause: "All rights and remedies of each Party under this Agreement are cumulative and in addition to all other rights and remedies which may be available to that Party from time to time, whether under any other agreement, at law, or in equity."

[11]This is not to say that "benefit of the bargain" does not exist as a theory of damages in other noncontractual contexts, such as in deceit.

case that the injured party should be put in as good a position as if the contract had been performed. See *Normandin* v. *Eastland Partners, Inc.*, 68 Mass. App. Ct. 377, 392 (2007). In other words, the injured party is to receive the benefit of the bargain by being awarded a sufficient sum to be compensated for the loss that the fulfilment of the contract would have prevented. See, e.g., *VMark Software, Inc.* v. *EMC Corp.*, 37 Mass. App. Ct. 610, 611 n.2 (1994); *Doering Equip. Co.* v. *John Deere Co.*, 61 Mass. App. Ct. 850, 855-856 (2004). The benefit of the bargain theory does not compel an immediate assessment of damages. See *Goldman* v. *Mahony*, 354 Mass. 705, 709 (1968) (plaintiffs entitled to "the benefit of their contractual bargain, if such damages are *reasonably proved*" [emphasis added]). Ordinarily, in actions for breach of contract, "[t]he plaintiff is entitled to be made whole and no more." *Ficara* v. *Belleau*, 331 Mass. 80, 82 (1954).

Here, the landlord has brought suit against the tenant for breach of contract, a recognized remedy at law. For a breach of contract, the relief that may be ordered is the payment of money damages, upon sufficient proof of the injured party's expected gains and losses. See 11 Corbin, Contracts § 55.3 (rev. ed. 2005). Furthermore, multiple theories exist as to how damages may be proved. The landlord seeks posttermination damages for the period of time the leasehold remained unrented, as well as additional damages for a period of time that, while under a new lease, the landlord receives rent but in an amount less than required under the terms of the original lease. As a remedy, the landlord seeks benefit of the bargain. However, in doing so, it confuses the meaning of the "remedy" with the "relief" sought. Moreover, the landlord cannot avail itself of damages under the benefit of the bargain theory where the relevant damages, calculated from the total rent payment bargained for under the lease agreement, cannot be "reasonably proved" until 2018. As already set forth, the amount of damages due the landlord remains contingent upon a final assessment at the end of the original lease period, as the tenant is entitled to account for any unforseen events that may occur in the interim.

*Conclusion.* The part of the judgment finding liability in favor of the landlord is affirmed. The part of the judgment as-

sessing damages is vacated, and the case is remanded to the Superior Court for calculation of damages due to the landlord as of the time it recovered possession of the premises, and for further proceedings consistent with this opinion.[12]

                                                        *So ordered.*


KANTROWITZ, J. (concurring). It appears to me that, in response to the question when damages should be paid, the answer should be at the time they become readily ascertainable. As the applicable cases, ancient as they might be, counsel otherwise, I must reluctantly concur with the well-reasoned and well-written opinion of the court.

The cases — *Woodbury* v. *Sparrell Print*, 187 Mass. 426 (1905); *Gardiner* v. *Parsons*, 224 Mass. 347 (1916); and *Zevitas* v. *Adams*, 276 Mass. 307 (1931) — upon which the court's opinion rests were all written prior to leases even being considered contracts,[1] with the memory of Boston's devastating Great Fire of 1872 perhaps still etched in memory. Today it is far more likely, is it not, that a corporation with a million dollar judgment collecting generous interest for several years will dissolve than the premises will burn down or be taken via eminent domain?

Such clearly was the logic of the thoughtful judge who inter-

---

[12]As the landlord's claims against the guarantor stand in no greater legal stead than as against the tenant, the guarantor is likewise entitled to postpone the assessment of posttermination damages until the end of the lease term.

Our decision is not intended to suggest, however, that the landlord has no basis to seek prejudgment security.

[1]See *Humphrey* v. *Byron*, 447 Mass. 322, 326 (2006), quoting from *Young* v. *Garwacki*, 380 Mass. 162, 164-165 (1980), and *Wesson* v. *Leone Enterprises, Inc.*, 437 Mass. 708, 717 (2002) ("Our *Young* decision was rooted largely in the gradual departure from the common-law agrarian model of leases, which regarded a lease as a conveyance of property. In the *residential* context, we have overthrown the doctrine of caveat emptor and the notion that a lease is a conveyance of property. Similarly, in the commercial context, we have recognized that the notion of a lease as a conveyance no longer comports with the reality of the typical modern commercial lease, which is intended to secure the right to occupy improvements to the land rather than the land itself, and which usually contemplates a continuing flow of necessary services from landlord to tenant, services that are normally under the landlord's control. *The modern trend is to regard leases not as conveyances, [but] as contracts for the possession of property*" [emphasis added; citations and quotations omitted]).

preted the difficult to decipher *Woodbury* v. *Sparrell Print, supra.* There, the court considered when payment was due for the loss of rent as a result of the tenant's termination of the lease. It held that "[t]he liability rests upon the agreement contained in the lease, and as to this there is no breach of contract on the part of the lessee, until the time for payment arrives." *Id.* at 431. The court found that payment was due in a lump sum and that "the time for payment" was when the premises "cease to remain unleased." *Ibid.* In other words, the tenant's damages to the landlord did not immediately accrue upon termination of the lease, but would if and when the landlord leased the property to a new tenant. At that point, the deficiency between the new rent and old rent would be calculable, and the actual costs of the tenant's breach could be ascertained to a reasonable degree of certainty. *Woodbury* was followed, however, as this court's opinion indicates, by cases that delineated a clear rule barring recovery until the end of the original lease term given the many unknown factors that make the determination of damages speculative.

When, however, damages can be calculated with a reasonable degree of certainty, those concerns fade away, especially here where the commercial corporate tenant breached the lease just eighteen months into a twelve-year lease and the premises were ultimately re-let. Forcing the landlord to wait until 2018 to determine damages involves a possibility, if not overwhelming probability, that the tenant corporation could be dissolved or declared bankrupt, leaving the landlord at a complete loss vis-à-vis the defaulting tenant.[2]

Given that the law continues to evolve in this field, see *Humphrey* v. *Byron*, 447 Mass. 322, 326 (2006), discussed in note 1, *supra,* and *Cummings Properties, LLC* v. *National Communications Corp.,* 449 Mass. 490, 494 (2007), discussed in the court's opinion, *ante* at 422 n.7, the time might be ripe for the Supreme Judicial Court to revisit and reevaluate cases written scores of years ago.[3]

---

[2]The landlord could have avoided this predicament by including in the lease other remedies available to guard against default. This shortcoming was remedied in the subsequent lease on the property.

[3]I recognize that, given *Cummings*, most leases today contain more than a standard indemnity clause.