PER CURIAM.
The Landlord, Amerishop Mayfair, L.P. (“Amerishop”) appeals the trial court’s final judgment finding that Thomas Billante was not liable as a guarantor for the tenant’s breach of a commercial lease agreement. We affirm.
Amerishop entered into a shopping center lease with the tenant, Thomas Speciality Restaurants on February 24, 1997. Billante signed a rental guaranty dated February 25, 1997, wherein he guaranteed all terms of the lease including, but not limited to payment by the tenant, of the minimum rental percentage rental, for the first two years of the lease.[1] The rental guaranty provided in pertinent part that:
Guarantor agrees, absolutely, unconditionally and irrevocably, that (1) this obligation shall be binding upon the Guarantor without any further notice or acceptance thereof, but the same shall be deemed to have been accepted by the execution of the within lease; (2) immediately upon each and every default by Tenant, without any notice to or demand upon the Guarantor, Guarantor will pay to Landlord the sum or sums in default and will comply with or perform all the terms, covenants and conditions of said Lease which shall be binding upon the Tenant as provided in said Lease; (3) no extensions, forbearance or leniency extended by the Landlord to said Tenant shall discharge the Guarantor and the Guarantor agrees at all times it will be liable notwithstanding same and not *808 withstanding the fact that the Guarantor has had no notice of any said default or of any said forbearance or extension; (4) Landlord and Tenant without notice to or consent by Guarantor may at any time or times enter into such modifications, extensions, amendments or covenants respecting the said Lease and that Guarantor shall not be released thereby, it being intended that any joinder, waiver, consent or agreement by Tenant by its own operation, shall be deemed to be a joinder, consent or agreement by Guarantor with respect thereto and that Guarantor shall continue as Guarantor with respect to the said Lease as so modified, extended, amended or otherwise affected.
The obligations of the Guarantor herein shall be extensive with and shall remain in effect as long as Tenant’s obligations in and under said Lease, and all extensions or modifications thereof shall continue, and as long as said Tenant shall be liable Guarantor shall be liable thereunder in the same manner and in the same effect: EXCEPT, HOWEVER, bankruptcy or insolvency of the Tenant shall not release Guarantor from liability hereunder.... This Guarantg mag onlg be amended or modified at ang time by an instrument in writing executed by the Landlord and Guarantor.
(Emphasis added).
Thomas Speciality Restaurants subsequently assigned their lease to La Fon-taine, Restaurant, L.C. on August 21, 1997 with the written consent of Amerishop and Billante. La Fontaine Restaurant defaulted on their lease in March of 1999. In July of 1999, Billante divested himself of his interest in the restaurant and sold his interest to Martin Solomon and Churt Partners. On May 19, 2000, Amerishop entered into a lease termination agreement with La Fontaine Restaurant. Billante was not a party to this lease termination agreement nor was he given notice that such an agreement was to be executed. The pertinent parts of the lease termination agreement are as follows:
Paragraph 2:
The aforedescribed Lease between the parties is deemed to be terminated and the effective date of said termination for the purpose of this Lease Termination Agreement shall be deemed to be May 15, 2000....
Paragraph 4:
Landlord acknowledges that the afore-described Lease is terminated as of the Termination Date and the Landlord releases Tenant from all obligations of Tenant under the lease.... Landlord specifically waives, foregoes and releases any and all rights which it has, had, or may have had under the aforesaid lease as of the Termination Date....
Paragraph 6:
As a material condition of this Agreement, the Tenant shall sell and transfer over to the Landlord those certain items identified in Exhibit 1, consisting of certain furniture, fixtures and equipment located at the demised premises (the “FF & E”). The Tenant represents and warrants that it owns this FF & E free and clear of all liens and encumbrances of any nature and any kind ... to the extent there are liens held by any third party, Tenant will satisfy those liens in full....
Paragraph 11 provides:
This agreement does not release nor impair any right of the Landlord to proceed under the certain Rental Guaranty executed by Tom Billante dated February 24,1997.
Amerishop did not provide notice to Bil-lante that La Fontaine Restaurant had failed to pay its rent nor did it seek payment of the past due rents until June 20, *809 2000, one year and three months, after La Fontaine Restaurant defaulted on then-lease payments. On June 20, 2000, Amer-ishop filed its complaint to enforce the terms of the rental guaranty against Bil-lante.[2]
After a bench trial, the trial court entered a final judgment in favor of Billante. The court found that the guarantor’s obligation terminated after the debtor’s obligation was discharged by the lease termination agreement and Amerishop took the instant appeal.
Amerishop argues that pursuant to the terms of the rental guaranty, Billante remained liable for the tenant’s breach of the lease. Amerishop further argues that the common law rule, that a guarantor is released by the release of the principal debt- or, was contractually altered by the specific language placed in the rental guaranty; the rental guaranty was enforceable against Billante as La Fontaine Restaurant was insolvent; no formal proceeding was required to determine La Fontaine Restaurant’s insolvency as a condition precedent to bringing suit; and even if a formal proceeding was required, there was substantial evidence of the tenant’s insolvency admitted at trial. Billante responds, however, that Amerishop’s release of La Fontaine Restaurant from liability also released him from all obligations under the guaranty. We agree.
A contract of guaranty is the promise to answer for the payment of the debt, default or performance of another. Nicolaysen v. Flato, 204 So.2d 547, 549 (Fla. 4th DCA 1967). The law is settled that the release of the debtor constitutes a release of the guarantor. See Matey v. Pruitt, 510 So.2d 351, 353 (Fla. 2d DCA 1987)(if debtor’s obligation has been paid or otherwise satisfied, the guarantor’s obligation is terminated). This is because where the debtor has been released, there is nothing left for the guarantor to secure. Id.
In the present case, the express terms of the rental guaranty indicated, among other things, that Billante agreed to be absolutely liable for all damages that arose from the tenant’s breach of the lease and that his obligations would be “extensive with and remain in effect as long as tenant’s obligations.” Hence, to the extent that the tenant had obligations under the lease, so did Billante. Pursuant to this agreement, if the tenant defaulted within the two year period described in the contract and the tenant remained obligated to the landlord, the landlord could obtain relief from Billante. It follows that once the tenant’s obligations ceased, Billante’s obligations ceased also. We therefore conclude that Billante’s obligations terminated once the lease termination agreement discharged La Fontaine Restaurant’s obligations. Jordan v. Keys Cove Marine, Inc., 719 So.2d 378 (Fla. 3d DCA 1998). See also Matey, supra.
Amerishop, however, maintains that because the lease termination agreement contained language that it did not release or impair any right of Amerishop to proceed under the rental guaranty against Billante, Billante remained liable. We disagree where Billante was not a party to this lease termination agreement and did not consent to the same. For this reason, Amerishop’s reliance upon the decision of New Market Acquisitions, Ltd. v. Powerhouse Gym, 154 F.Supp.2d 1213 (S.D.Oh.2001) is misplaced.
In New Market, the guarantor expressly agreed in the guaranty agreement to remain liable for all damages even where the landlord released the tenant from further obligations. Id. at 1221;(empha-sis added). The New Market court recog *810 nized that but for the clear language of the guaranty that shows that the guarantors expressly agreed to remain liable for all damages even if the landlord released the tenant, the settlement agreement entered into between the landlord and tenant would have resulted in a compete discharge of the guarantor. The guaranty in the present case does not purport to hold the guarantor liable for damages in the event of a release of the tenant and is therefore distinguishable.
Finally, and as an additional ground for affirmance, we note that the rental guaranty in this case provided that the guaranty could only be amended or modified by an instrument in writing executed both by the landlord and guarantor. Here, Billante never executed the lease termination agreement or received notice of it for that matter. The tenant’s execution of the lease termination agreement, independent of the guarantor, therefore, could not bind Billante as guarantor.
Accordingly, we affirm the final judgment under review.
Affirmed.

. The first two years of the lease were defined as the twelve month period commencing on the first day of January of the calendar year immediately succeeding the commencement date and each twelve month period thereafter. The two year lease period according to this definition started in January 1998 and ended on December 31, 1999. Billante would be responsible for a period of six months after any default by the tenant.

. La Fontaine Restaurant's rent delinquency was approximately $336,000.00.