# Third District Court of Appeal

## State of Florida

Opinion filed September 27, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1317
Lower Tribunal No. 20-20685
_____

**TBC Florida, LLC, et al.,**
Appellants,

vs.

**Infinity Biscayne Myrtle Member, LLC,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Beatrice Butchko, Judge.

Cohen Law, and Danielle Cohen and Keith R. Gaudioso, for appellants.

Zarco Einhorn Salkowski, P.A., and Robert F. Salkowski and Seth M. Shapiro, for appellee.

Before EMAS, MILLER and LOBREE, JJ.

EMAS, J.

## INTRODUCTION

In the action below, Infinity Biscayne Myrtle Member, LLC ("Landlord") obtained an amended final judgment against TBC Florida, LLC ("Tenant") and Brianna Hathaway ("Guarantor") on Landlord's complaint for breach of contract and breach of guaranty. Tenant and Guarantor appeal that amended final judgment and, for the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Guarantor originally ran a business called BBF Miami, LLC, which leased space from Landlord (and from Landlord's predecessor) under a ten-year Lease Agreement executed in early 2015 ("Lease Agreement"). Along with that Lease Agreement, Guarantor executed a Guaranty. In June 2015, BBF Miami assigned the Lease Agreement to Tenant. When COVID-19 resulted in the closure of gyms and similar establishments (including Tenant's business), Tenant stopped paying rent. Landlord declared Tenant in default and filed suit against Tenant (for breach of contract) and against Guarantor (for breach of the Guaranty).

Tenant and Guarantor jointly filed an answer to the complaint, asserting, inter alia, an affirmative defense of failure to mitigate, but asserted no affirmative defenses specific to the Guaranty.

2

Landlord later moved for summary judgment on both counts of the complaint, and once again, Tenant and Guarantor jointly responded, and, relevant to the breach of guaranty claim, asserted that Guarantor's obligations to Landlord were released when BBF Miami assigned the Lease Agreement to Tenant in June 2015.

After a hearing, the trial court granted summary judgment to the Landlord, denied Tenant and Guarantor's motion for rehearing, and entered final judgment against Tenant and Guarantor. This appeal followed.

On appeal, Tenant and Guarantor assert: (1) Guarantor was released from the guaranty as a matter of law when BBF Miami assigned the Lease Agreement to Tenant; and (2) a genuine issue of material fact remains as to whether Landlord conducted a good faith effort to re-let the premises, and thus the trial court erred in granting summary judgment.

**ANALYSIS AND DISCUSSION**

**Judgment on Breach of the Guaranty**

As to the first issue, which we review de novo, see <u>Perez-Gurri Corp. v. McLeod</u>, 238 So. 3d 347, 350 (Fla. 3d DCA 2017), three documents inform the question of whether Guarantor Hathaway's guaranty survived BBF Miami's assignment of the lease to TBC Florida: (1) the 2015 Lease Agreement; (2) the Guaranty; and (3) the Assignment.

3

The Lease Agreement identifies the "Tenant" as BBF Miami, Hathaway's company. The Lease Agreement identifies Hathaway as the "Guarantor." Paragraph 22 of the Lease Agreement permits the Tenant to assign the contract with prior written consent from Landlord. Importantly, while this paragraph provides that, upon assignment "Tenant [BBF Miami] shall be released from any and all liability or obligation under the Lease," there is no mention of the Guarantor (Hathaway) or the Guaranty attached to the Lease Agreement. In other words, while the terms of the Lease Agreement expressly provide that BBF Miami's assignment of the Lease Agreement results in a release of BBF Miami, there is nothing in the Lease Agreement providing that BBF Miami's assignment of the Lease Agreement results in a release of the Guarantor.

By contrast, the Guaranty (which is attached as an exhibit to, and incorporated in, the Lease Agreement) provides that Guarantor guarantees the obligations of "Tenant" and further "agrees that any modification of the Lease . . . shall not in any way release guarantor from liability hereunder or terminate, affect, or diminish the validity of this Guaranty."

Finally, the Assignment makes no mention of the Guarantor or the Guaranty, but it does provide: "Assignee [TBC Florida] expressly assumes assignor's [BBF Miami's] obligations under the lease as assigned by this

assignment, commencing on the effective date." The Assignment also incorporates by reference the original 2015 Lease Agreement.

Tenant and Guarantor contend that the assignment of the Lease Agreement from BBF Miami to TBC Florida extinguished Guarantor's obligation under the Guaranty. Yet they can point to no provision in the Lease Agreement, the Guaranty or the Assignment that would support such a conclusion. While one might properly contend these documents could have been written with greater clarity, perhaps including in the Assignment some specific reference to the Guaranty, it is manifestly not the job of the court to rewrite the agreements between the parties. Indeed, as this court previously stated in Perez-Gurri, 238 So. 3d at 350:

> "When interpreting a contract, the court must first examine the plain language of the contract for evidence of the parties' intent." Murley v. Wiedamann, 25 So. 3d 27, 29 (Fla. 2d DCA 2009). A single term or group of words must not be read in isolation. American K-9 Detection Servs., Inc. v. Cicero, 100 So. 3d 236, 238-39 (Fla. 5th DCA 2012). "Rather, 'the goal is to arrive at a reasonable interpretation of the text of the entire agreement to accomplish its stated meaning and purpose.'" Id. (quoting Ware Else, Inc. v. Ofstein, 856 So. 2d 1079, 1081 (Fla. 5th DCA 2005). "[W]e are constrained by law to construe a contract as a whole so as to give effect, as here, to all provisions of the agreement if it can be reasonably done." McArthur v. A.A. Green & Co. of Fla., 637 So. 2d 311, 312 (Fla. 3d DCA 1994).

The trial court, under the plain reading of the contractual agreements as a whole, properly determined that Hathaway, as Guarantor, remained

5

obligated following the Assignment. Although the Lease Agreement identifies BBF Miami as the "Tenant" in the original Lease Agreement, and Guarantor guaranteed the obligations of said-defined "Tenant," Guarantor also agreed, under the terms of the Guaranty, that "any modification of the lease"—which would include the Assignment— "shall not in any way release [Guarantor] from liability hereunder or terminate, affect or diminish the validity of the Guaranty." Thus, when BBF Miami assigned the Lease Agreement to TBC Florida, TBC Florida became the "Tenant" and, given the absence of any other provision addressing the impact of the assignment upon the Guaranty and Hathaway's obligation as Guarantor, the assignment of the lease from BBF Miami to TBC Florida did not "terminate, affect or diminish" Guarantor's obligation and liability.

Guarantor relies on Amerishop Mayfair, L.P. v. Billante, 833 So. 2d 806, 809 (Fla. 3d DCA 2002) for the common law proposition that "a release of the debtor constitutes a release of the guarantor." However, while there are some factual similarities between Billante and the instant case, there are significant differences which render Guarantor's reliance misplaced.

Although the guarantor in Billante signed a similarly worded guaranty on behalf of the original tenant and the lease was later assigned to a new tenant, the landlord and the new tenant thereafter entered into an agreement

6

by which the lease was terminated, and the new tenant was released and discharged from all obligations under the lease. Despite this release, the landlord filed suit against the guarantor for breach of the guaranty. The trial court ultimately entered judgment in favor of the guarantor, and we affirmed, since there was no longer any tenant with a remaining obligation under the lease, and no agreement providing that the guarantor's obligations would survive the landlord's release of the new tenant. Id. at 810. We observed that if the new tenant had remained obligated under the lease (as in our case), so too would the guarantor:

> Hence, to the extent that the tenant had obligations under the lease, so did Billante. Pursuant to this agreement, if the tenant defaulted within the two year period described in the contract and the tenant remained obligated to the landlord, the landlord could obtain relief from Billante. It follows that once the tenant's obligations ceased, Billante's obligations ceased also. We therefore conclude that Billante's obligations terminated once the lease termination agreement discharged [the new tenant's] obligations.

Id. at 809.

In the instant case, TBC Florida—the assignee and new tenant—remained obligated under the assigned Lease Agreement when the Landlord sued both TBC Florida (as the new Tenant) and Hathaway (as Guarantor) for breach of the contract and guaranty, and accordingly, Guarantor remained obligated. Had the Landlord released TBC Florida or otherwise

7

terminated the Lease Agreement with TBC Florida, Guarantor would also be released from liability under Billante.  See also BankAtlantic v. Berliner, 912 So. 2d 1260 (Fla. 4th DCA 2005) (distinguishing Billante where primary obligor was not released before suit was filed against guarantor).

**Judgment for Breach of the Lease Agreement**

Next, TBC Florida asserts that there is a genuine issue of material fact as to whether Landlord conducted a good faith effort to re-let the premises, and therefore, the trial court erred in entering final summary judgment on the breach of contract count. We review this issue de novo. Volusia Cty. v. Aberdeen at Ormond Beach L.P., 760 So. 2d 126, 130 (Fla. 2000). Although "[g]ood faith is generally an issue of fact which precludes summary judgment," Lees v. Pierce, 648 So. 2d 839, 841 (Fla. 5th DCA 1995), it is not always so, see Vibrant Video Inc. v. Dixie Pointe Associates, 567 So. 2d 1003 (Fla. 3d DCA 1990), and in this case, TBC Florida failed to meet its burden, under the new summary judgment standard, of providing sufficient evidence to support its affirmative defense of Landlord's alleged failure to exercise good faith in mitigating its damages.

Landlord attached to its summary judgment motion the affidavit of corporate representative David Berg, wherein he averred that Landlord had made efforts to mitigate its damages, but was unsuccessful.  Attached to this

affidavit was a broker agreement and a letter establishing attempts to re-let the space. In response, TBC Florida provided the affidavit of its manager, Jillian Lorenz, who averred that TBC Florida had "obtained two (2) offers from qualified candidates who submitted letters of intent to" Landlord. Attached to the affidavit were the letters of intent and several email exchanges between the prospective tenants, broker, and the Landlord. However, and as Landlord points out on appeal, none of this evidence raised a genuine issue of material fact on the good faith efforts of the Landlord to mitigate its damages; indeed, if it shows anything, it is only that Landlord was negotiating with potential tenants, but the parties were simply unable to agree.

TBC Florida's unadorned allegation that Landlord was acting in bad faith because it refused to lower the rent amount, or because Landlord ignored its square footage assessment, is insufficient without competent evidence to support it (for example, expert testimony demonstrating that the square footage or the nature of the rental space justified rent of a certain amount (or range) per square foot, and that Landlord was unreasonably demanding a higher amount or range).

Applying the new standard to our review of an order granting summary judgment, we conclude TBC Florida's failure to meet its burden of providing

evidence to establish a "sufficient disagreement" on the issue of whether the

Landlord failed to mitigate in good faith is fatal. See Rich v. Narog, 366 So.

3d 1111, 1117-18 (Fla. 3d DCA 2022) (reiterating:

> "In Florida it will no longer be plausible to maintain that 'the existence of any competent evidence creating an issue of fact, however credible or incredible, substantial or trivial stops the inquiry and precludes summary judgment, so long as the 'slightest doubt' is raised. . . .'" Under the federal summary judgment standard that is now applicable in Florida's state courts, where, as here, the nonmoving party bears the burden of proof on a dispositive issue at trial, the moving party need only demonstrate "that there is an absence of evidence to support the nonmoving party's case."
>
> Under the new standard, once the moving party satisfies this initial burden, the burden then shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . ." Importantly, though, "[i]f the evidence [presented by the nonmovant] is merely colorable, or is not significantly probative, summary judgment may be granted."
>
> The trial court, therefore, must determine – as is the case with a motion for directed verdict – whether the nonmovant's "evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." That is to say, the nonmovant's evidence must be of sufficient weight and quality that "reasonable jurors could find by a preponderance of the evidence that the [nonmovant] is entitled to a verdict." "Where the record taken as a whole could not lead a rational trier of fact to find for the non-

moving party, there is no 'genuine issue for trial.'" (internal citations omitted)).

We find the other arguments urged by TBC Florida unavailing.

Affirmed.